IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | |
|---|---|
| TENNESSEE EQUALITY PROJECT FOUNDATION, INC., | ) ) ) |
| Plaintiff, | ) Case No. 3:23-cv-01044 ) |
| v. | ) Judge Waverly D. Crenshaw ) ) Magistrate Judge Barbara Holmes |
| THE CITY OF MURFREESBORO, TENNESSEE, et al. | ) ) ) |
| Defendants. | ) JURY DEMAND ) |

## MEMORANDUM IN SUPPORT OF JOINT MOTION TO DISMISS FILED ON BEHALF OF INDIVIDUAL DEFENDANTS

Defendants, Shane McFarland ("Mayor McFarland"), in his individual and official capacities, and Michael Bowen, Kevin Jones, Jami Averwater, Madelyn Scales Harris, Austin Maxwell, Kirt Wade, Shawn Wright, and Craig Tindall ("City Manager Tindall"), in their official capacities only, (collectively, the "Individual Defendants") submit the following memorandum of law in support of their motion to dismiss.

### INTRODUCTION

Mayor McFarland has been sued in his individual capacity for alleged constitutional violations related to a City of Murfreesboro (the "City") ordinance and the City's alleged refusal to grant Plaintiff, Tennessee Equality Project Foundation, Inc., ("TEP") an event permit. Mayor McFarland is not a proper defendant and seeks dismissal because he: (1) retains absolute immunity for legislative conduct; and (2) did not take individual action to deny a permit application nor does he have the authority to do so.

Mayor McFarland and the remaining Individual Defendants additionally seek dismissal of the duplicative and unnecessary official capacity claims asserted in the Complaint.[1]

**FACTUAL AND PROCEDURAL BACKGROUND**[2]

**A.     Factual Background**

For the purposes of this Motion, the following facts are relevant to the Court's analysis. TEP alleges that the City issued it a permit to host the BoroPride festival on City property on September 17, 2022. (D.E. 1, PageID #13, ¶ 48.) TEP featured drag performances during the festival. (*Id.*, PageID #14, ¶ 52.) TEP alleges that anti-drag activists pressured City officials in the weeks leading up to the event. (*Id.*, PageID #16, ¶ 59.) For example, an individual named Sara Mac sent an email to Mayor McFarland stating "[a]re you aware that there will be a 'family friendly' drag show at the [Boro] Pride festival this year? . . . I URGE you to put a stop to this indecent behavior that exploits and harms children! There is nothing family friendly about this type of event." (*Id.*, PageID #16, ¶ 60, Exh. C to Compl.) The next day, Mayor McFarland responded saying that "[t]he event you are referring to is a private event that the City is not affiliated in any way. We don't get to pick and choose legally who can or who can't use City facilities." (D.E. 1, PageID# 16, ¶ 61, Exh. C to Compl.)

On September 14, 2022, Landon Starbuck sent an email to Mayor McFarland and wrote:

> I'm reaching out because I've recently been made aware of an upcoming event called Boropride which is marketed as a family friendly event with live entertainment. As I'm sure you're aware, recent Pride related events all over

---

[1] City Manager Tindall also has been sued in his individual capacity. The instant Motion does not seek dismissal of Tindall's individual capacity claims. City Manager Tindall contemporaneously files an Answer.

[2] For the purposes of this motion only, the Individual Defendants accept TEP's well-pleaded facts as true.

> the Country [sic] marketed as 'family friendly' haven't turned out to be family friendly and have featured inappropriate adult entertainment (drag shows) in front of minors. I'm hoping that law enforcement will be present to ensure children are not exposed to any lewd and obscene acts that may arise.

(D.E. 1, PageID# 17, ¶ 63, Exh. C to Compl.)

After the 2022 festival, on September 22, 2022, Sarah Mac sent another email to Mayor McFarland expressing concerns about drag performances at BoroPride and providing a link to an Instagram post with a video of drag performances. (*Id.*, PageID# 18, ¶ 67, Exh. C to Compl.) Mayor McFarland responded by stating:

> The City of Murfreesboro . . . do[es] not have the authority nor ability to stop a private gathering or something that is advertised to the public. As much as I disagree with different gatherings or activities. I legally do not have the authority to stop someone's freedom of speech or right to gather. I took an oath to our constitution and as long as someone is not breaking the law . . . the [sic] City doesn't have the authority to usurp someone's constitutional rights.

(*Id.*, PageID# 18-19, ¶68, Exh. C to Compl.) The next day, Mayor McFarland sent a follow up email to Sarah Mac stating "I am looking into this video. This is disturbing." (*Id.*, PageID# 19, ¶ 69.) Mayor McFarland subsequently sent an email to City Manager Tindall, City Attorney Adam Tucker, and Parks & Recreation Director Angela Jackson including a link to the Instagram video provided by Sarah Mac. (*Id.*, PageID# 19, ¶ 70, Exh. E to Compl.)

In October 2022, City Manager Tindall sent a letter to TEP claiming that the BoroPride festival violated City ordinances and exposed children to speech of an explicitly sexual nature. (D.E. 1, PageID# 19, ¶ 71.) City Manager Tindall then forwarded his letter to the Parks & Recreation Department with a memorandum that stated the Department was "prohibited from renting or otherwise contracting for use of a City facility by [TEP] or any entity affiliated organization [sic] for purposes of renting a City facility." (*Id.*,

PageID# 20, ¶ 73, Exh. G to Compl.) The next day, City Manager Tindall forwarded the letter to City Council, including Mayor McFarland. (*Id.*, PageID# 20, ¶ 74, Exh. H to Compl.) In his correspondence to City Council, City Manager Tindall explained that "City code permits the City Manager to deny a permit to any organization that previously violated terms of a City permit," and therefore "I have prohibited Parks & Recreation from enter [sic] into further rental contracts with this organization or entities affiliating with it." (*Id.*)

The Complaint next details TEP's communications with City Manager Tindall and attorneys representing the City and negotiations for BoroPride's 2023 festival. (D.E. 1, PageID #21-25, ¶¶ 75-94.) There are no allegations made against Mayor McFarland in this portion of the Complaint. (*Id.*) Plaintiff alleges that the City refused to work towards a productive resolution, so Plaintiff secured a venue at Middle Tennessee State University to host BoroPride in 2023. (D.E. 1, PageID# 24, ¶¶ 90-91.)

TEP alleges that City officials worked to draft and pass a new "Community Decency" Ordinance, 23-O-22 that would provide the City Manager with unfettered statutory authority to prevent and punish speech like the BoroPride event (the "Ordinance"). (D.E. 1, PageID# 26, ¶ 95.) The City Council, including Mayor McFarland, conducted a first reading of the Ordinance on May 25, 2023, which passed by a vote of five to one. (*Id.*, ¶ 96.) The Ordinance became effective on June 30, 2023. (*Id.*, ¶ 97.) The Ordinance incorporated a 1977 definition of "sexual conduct" which included acts of "homosexuality." (D.E. 1, PageID# 27, ¶ 101.)

B.  **Procedural Background**

On October 4, 2023, TEP filed its Complaint asserting claims under 42 U.S.C. § 1983 and the Tennessee Constitution against: the City of Murfreesboro; City Manager Craig Tindall and Mayor McFarland, in their official and individual capacities; and the following City employees and elected officials in their official capacities only: Chief of Police Michael Bowen, Director of Code Enforcement Kevin Jones, City Council Member Jami Averwater, City Council Member Madelyn Scales Harris, City Council Member Austin Maxwell, City Council Member Kirt Wade, and City Council Member Shawn Wright. (D.E. 1, *generally*.) In sum, Plaintiff alleges that the City unlawfully: (1) prohibited Plaintiff from obtaining a permit to host its annual BoroPride Festival on City property; and (2) passed an unconstitutional ordinance governing community decency. (*Id.*)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6). *New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). However, when a document is referred to in a pleading and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018). Additionally, courts may consider public records without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008); *see also Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

## ARGUMENT

Section 1983 establishes a "cause of action for deprivation under color of state law, of any rights, privileges or immunities secured by the Constitution or laws of the United States." *Jones v. Muskegon Cty.*, 625 F.3d 935, 940-41 (6th Cir. 2010) (quoting *Horn v. Madison Cty. Fiscal Ct.*, 22 F.3d 653, 656 (6th Cir. 2002)). To prevail on a cause of action under Section 1983, a plaintiff must prove "'(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones*, 625 F.3d at 941)). Moreover, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). As set forth below, TEP fails to allege that Mayor McFarland's individual actions violated the constitution. As a

threshold matter, however, Mayor McFarland is immune from the lion's share of TEP's claims because the Complaint alleges that McFarland acted in his legislative capacity, for which he retains absolute immunity.

### A. Mayor McFarland retains absolute legislative immunity against Counts One through Eleven of the Complaint.

In Counts One through Eleven of the Complaint, TEP asserts various claims challenging the constitutionality of the Ordinance and the 1977 definition of sexual conduct, which included "homosexuality."[3] (D.E. 1, PageID# 34-56.) TEP apparently asserts these claims against all defendants, which includes Mayor McFarland in his individual capacity. (*Id.*) The only conduct attributed to Mayor McFarland under these causes of action is his legislative action of voting for the passage of and signing the Ordinance. (*Id.*, PageID# 26, 29, 34, ¶¶ 96, 109, 126.)

Defendants who engage in legislative activities are absolutely immune from suit in their individual capacities under § 1983.[4] *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998); *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 437 (6th Cir. 2005). Legislative immunity derives from the federal Constitution's Speech or Debate Clause, which states in relevant part that, "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. Art. I, § 6. The rationale supporting absolute legislative immunity is summarized in Article I as follows:

---

[3] It is not necessary for the Court's analysis of the instant Motion, but the City subsequently passed Ordinance 23-O-31 which amends City Code Section 21-23(C) and Section 21-71 by deleting the word "homosexuality" from the definition of "Sexual Conduct."

[4] Legislative immunity encompasses monetary relief and "is equally applicable to § 1983 actions seeking declaratory or injunctive relief." *Sup. Ct. of Va. V. Consumers Union of the U.S.,* 446 U.S. 719, 732 (1980).

> In order to enable and encourage a representative of the public to discharge his public trust with firmness and success, it is indispensably necessary, that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offense.

*Id*. The clause provides protection not "simply for the personal or private benefit of Members of Congress, but to protect the integrity of the legislative process by insuring the independence of individual legislators." *United States v. Brewster*, 408 U.S. 501, 507 (1972).

In 1951, the United States Supreme Court held that legislative immunity applies to state legislators. *Tenney v. Brandlove*, 341, U.S. 367, 376 (1951). The Court further extended this "venerable tradition" to local legislators, making them absolutely immune from suit under § 1983 for their legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 49 (1998). The *Bogan* Court reasoned:

> The rationale for according absolute immunity to federal, state, and regional legislators apply with equal force to local legislators. Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability. Furthermore, the time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator remains commonplace. And the threat of liability may significantly deter service in local government where prestige and pecuniary rewards may pale in comparison to the threat of civil liability.

*Id*. at 52.

Thus, there can be no question that legislative immunity extends to members of a City Council, including Mayor McFarland. The only relevant inquiry is whether he was engaged in "legislative activities" for the purposes of the claims asserted in Counts One through Eleven of the Complaint. "The 'legislative sphere' reaches things 'generally done in a session of the [legislature] by one of its members in relation to the business before it.' That includes those matters 'integral' to legislators' 'deliberative and communicative

processes' for evaluating bills, voting, or performing other tasks within their jurisdiction.'" *Kent v. Ohio House of Representatives Democratic Caucus*, 33 F.4th 359, 365 (6th Cir. 2022) (quoting *Gravel v. United States*, 408 U.S. 606, 624 (1972)).

Two factors guide the court's determination of whether an official's actions are legislative in nature. First, the Court "must consider whether a defendant's actions were legislative in form., i.e., whether 'they were integral steps in the legislative process.'" *Anders v. Cuevas*, 984 F.3d 1166, 1181 (6th Cir. 2021) (quoting *Bogan*, 523 U.S. at 55). The Court next "must ask whether a defendant's actions 'bore all of the hallmarks of traditional legislation,' including whether they 'reflected . . . discretionary, policymaking, decision[s] implicating the budgetary priorities' of the government and the services the government provides to its constituents." *Id.* at 1181-82 (quoting *Bogan*, 523 U.S. at 55-56). Here, the analysis is quite straightforward. In *Tenny*, the Court held that voting for an ordinance, introducing legislation, and signing legislation into law were formally legislative. *Tenny*, 241, U.S. at 55; *See also Vaduva v. City of Xenia*, 780 F. App'x at 331, 335 (6th Cir. 2019) (quoting *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 437 (6th Cir. 2005)) (holding that "[p]assing an ordinance is a 'purely legislative act.'").

Finally, legislative immunity protects legislators even if the underlying ordinance is unconstitutional. In *Vaduva*, the Sixth Circuit considered the following:

> Plaintiffs argue that City Council Defendants are not entitled to legislative immunity because passing an unconstitutional ordinance is not within the sphere of legitimate legislative activity, and that the district court erred by "focus[ing] on the nature of the act [rather than] the unconstitutionality of the ordinance." (Reply Brief for Appellant at 12.) Yet, to the contrary, "whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Canary v. Osborne*, 211 F.3d 324, 329 (6th Cir. 2000) (quotation omitted); see also *Collins v. Vill. of New Vienna*, 75 F. App'x 486, 488 (6th Cir. 2003). Thus, the constitutionality of [the ordinance at issue] is not relevant to this legislative immunity analysis. See, e.g. *Smith*, 641 F.3d at 218 ("Even if the Board did

> not have the power to abolish the alternative school under Tennessee law, the Board members may still enjoy legislative immunity as individuals in federal court for their legislative actions, sound or unsound.").

*Id.* at 335-336 (footnote omitted). As such, TEP's allegations that the City Council passed the Ordinance with an improper purpose do not save their claims against Mayor McFarland in this individual capacity.

For these reasons, Counts One through Eleven against Mayor McFarland in his individual capacity are ripe for dismissal.

B. **TEP fails to plausibly allege constitutional claims against Mayor McFarland in his individual capacity in Counts Twelve through Fourteen of the Complaint.**

In Counts Twelve through Fourteen of the Complaint, TEP asserts First Amendment claims against the City, City Manager Tindall, and Mayor McFarland related to the City's alleged policy of prohibiting permits for TEP. (D.E. 1, PageID #56-62, ¶ 269-308.) Under the relevant counts, TEP makes conclusory allegations that Tindall and McFarland imposed a policy to deny TEP permit applications; however, these allegations are belied by the Complaint's factual allegations. As explained below, TEP alleges that City Manager Tindall took any affirmative action to deny TEP's permits. Mayor McFarland cannot be held liable in his individual capacity because the Complaint fails to allege that the Mayor's own affirmative acts violated the constitution.

A plaintiff must present evidence that defendant, through his own actions, committed the tort or violated the U.S. Constitution or federal statute for which he has been sued. *Iqbal*, 556 U.S. at 676. Here, TEP alleges that City Manager Tindall – not Mayor McFarland – sent a "denial letter" to TEP following the 2022 BoroPride festival. (D.E. 1, PageID#1 9, ¶ 71-72.) TEP also alleges that City Manager Tindall – not Mayor McFarland – circulated a memo to the City's Parks & Recreation Department prohibiting

the issuance of permits to TEP in the future. (D.E. 1, PageID# 20, ¶ 73.) TEP further alleges that City Manager Tindall only informed City Council, including Mayor McFarland, of the "denial letter" after the fact. (*Id.*, ¶ 74.) In his communication to City Council, City Manager Tindall explained that "the City Code permits the City Manager to deny any permit . . ." and that "I" (referring to City Manager Tindall) "have prohibited Parks & Recreation from enter [sic] into further rental contracts with this organization . . ." (*Id.*) Under the heading "City Manager Tindall Denies TEP's Request for a Permit to Host the 2023 BoroPride Festival at Cannonsburgh Village Location," the Complaint alleges several paragraphs about the 2023 permit process; it is devoid of any allegations regarding Mayor McFarland's conduct. (D.E. 1, PageID# 21-25, ¶¶ 75-94.) TEP surmises that Mayor McFarland imposed a policy to prohibit permits to TEP by his "implicit approval." The Complaint fails to allege, however, any affirmative actions taken by Mayor McFarland.

For these reasons, Counts Twelve through Fourteen against Mayor McFarland in his individual capacity are ripe for dismissal.

C. **TEP's official capacity claims against the Individual Defendants should be dismissed as redundant and unnecessary.**

The Supreme Court explained in *Kentucky v. Graham*, 473 U.S. 159 (1985) that a suit against a government official in his or her official capacity is "only another way of pleading an action against an entity of which an officer is an agent." *Id.* at 165-66. The *Graham* Court explained that there is no need "to bring official-capacity actions against local government officials" because "local government units can be sued directly." *Id.* at 167 n. 14. Where a complaint names an official-capacity defendant and the entity of which the officer is an agent, the Sixth Circuit and its district courts consistently dismiss the

official capacity defendant due to redundancy. *Goodwin v. Summit Cty.*, 703 F. App'x 379, 382-83 (6th Cir. 2017); *Smith v. Flinkfelt*, 2014 U.S. LEXIS 42902, at *6 (E.D. Ky. Mar. 31, 2014; *Jackson v. Shelby Cnty. Gov't*, 2008 U.S. App. LEXIS 24045 at *2 (6th Cir. 2008).

Here, it is redundant and unnecessary to name the Individual Defendants in their official capacities because the City also is a party. The claims asserted against the Individual Defendants in their official capacities should be dismissed.

## CONCLUSION

For the foregoing reasons, Mayor McFarland seeks dismissal of the claims against him in his individual and official capacities and the remaining Individual Defendants seek dismissal of the claims against them in their official capacities.

Respectfully submitted,

*/s/ Cassandra M. Crane*
Kristin E. Berexa, BPR NO. 14833
Cassandra M. Crane, BPR NO. 34889
FARRAR | BATES | BEREXA
12 Cadillac Drive, Ste. 480
Brentwood, TN 37027
(615) 254-3060
kberexa@fbb.law
ccrane@fbb.law

*Counsel for Craig Tindall, in his individual capacity and Shane McFarland, in his individual capacity*

*/s/ Robert M. Burns*
Robert M. Burns (BPR #15383)
Samantha A. Burnett (BPR #37250)
HOWELL & FISHER, PLLC
3310 West End Aveue, Ste. 550
Nashville, TN 37203
rburns@howell-fisher.com
sburnett@howell-fisher.com

*Counsel for the City of Murfreesboro, Tennessee*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 15th day of November 2023 a true and correct copy of the foregoing Memorandum in Support of Joint Motion to Dismiss filed on behalf of Individual Defendants has been forwarded via the Court's electronic filing system to:

J. Alex Little
BURR FORMAN LLP
222 Second Avenue, South, Suite 2000
Nashville, TN 37201
alex.little@burr.com

*Attorneys for Plaintiff*

Stella Yarbrough
Li Nowlin-Sohl
AMERICAN CIVIL LIBERTIES UNION
 FOUNDATION
125 Broad Street
New York, NY 10004
lnowlin-sohl@aclu.org

*Attorneys for the Plaintiff*

Lucas Cameron-Vaughn
Jeff Preptit
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
syarbrough@aclu-tn.org
lucas@aclu-tn.org
jpreptit@aclu-tn.org

*Attorneys for Plaintiff*

Robert M. Burns
Samantha Burnett
HOWELL & FISHER, PLLC
3310 West End Aveue, Ste. 550
Nashville, TN 37203
rburns@howell-fisher.com
SBurnett@howell-fisher.com

*Attorneys for City of Murfreesboro,*
 *Tennessee*

 

                                                        /s/ *Cassandra M. Crane*
                                                        Cassandra M. Crane