IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| TENNESSEE EQUALITY PROJECT FOUNDATION, INC., | ) ) |
| | ) Case No. 3:23-cv--1044 |
| Plaintiff, | ) |
| | ) |
| v. | ) Judge Waverly D. Crenshaw |
| | ) |
| THE CITY OF MURFREESBORO, TENNESSEE, et al. | ) Magistrate Judge Barbara Holmes ) |
| | ) JURY DEMAND |
| Defendants. | ) |

**DEFENDANT CITY AND THE INDIVIDUAL DEFENDANTS
(IN THEIR OFFICIAL CAPACITIES ONLY) RESPONSE TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 2

    I.    PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS. .................. 2

        A.    Strict Scrutiny is Not Applicable Because the Time-Place-Manner Standard Governs Review, and the Ordinance Satisfies this Standard. ................................ 2

            i.    The revised Ordinance is not viewpoint-based, so strict scrutiny is inappropriate. ................................................................................................ 4

            ii.    The stated purpose of the Ordinance forecloses judicial speculation into the City's supposed purpose. ....................................................................... 5

            iii.    The secondary-effects doctrine cuts against the application of strict scrutiny.. 6

            iv.    The Ordinance satisfies the applicable time-place-manner standard. ............... 7

        B.    The Ordinance is Not Unconstitutionally Vague or Overbroad. ............................. 8

        C.    The Revised Ordinance is Not a Violation of the Equal Protection Clause or an Unlawful Bill of Attainder ................................................................................... 9

        D.    The City's Response to Plaintiff's Permit Request is not Unconstitutional ......... 10

            i.    The response does not function as a prior restraint. ........................................ 10

            ii.    The City did not retaliate against Plaintiff for protected First Amendment activity. ............................................................................................................ 11

            iii.    Plaintiff does not have standing. ..................................................................... 12

    II.    THE OTHER EQUITABLE FACTORS FAVOR THE STATE. ................................. 12

        A.    Plaintiff Cannot Establish Irreparable Harm. .......................................................... 12

        B.    The Equities Favor Denying Injunctive Relief ...................................................... 13

## TABLE OF AUTHORITIES

**Cases**                                                                                                                **Page(s)**

*Am. Booksellers v. Webb*,
  919 F.2d 1493 (11th Cir. 1990) ..................................................................................3

*Bethel Sch. Dist. No. 403 v. Fraser*,
  478 U.S. 234 (2002) ..................................................................................................3

*Brockett v. Spokane Arcades*,
  472 U.S. 491 (1985) ..................................................................................................4

*City of Renton v. Playtime Theaters, Inc.*,
  475 U.S. 41 (1986) ....................................................................................................7

*Crawford v. Lungren*,
  96 F.3d 380 (9th Cir. 1996) .......................................................................................8

*Daunt v. Benson*,
  956 F.3d 396 (6th Cir. 2020) .....................................................................................6

*Dobbs v. Jackson Women's Health Org.*,
  142 S. Ct. 2228 (2022) ..............................................................................................6

*Egbert v. Boule*,
  142 S. Ct. 1793 (2022) ............................................................................................11

*Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*,
  958 F.3d 532 (6th Cir. 2020) .....................................................................................2

*Erie v. Pap's A.M.*,
  529 U.S. 277 (2000) ..................................................................................................5

*FCC v. Pacifica Found.*,
  438 U.S. 726 (1978) ..................................................................................................7

*Friendship Materials, Inc. v. Mich. Brick, Inc.*,
  679 F.2d 100 (6th Cir. 1982) .....................................................................................2

*Ginsberg v. New York*,
  390 U.S. 629 (1968) ...............................................................................................1, 8

*Grayned v. Rockford*,
  408 U.S. 104 (1972) ..................................................................................................8

*Hooper v. California*,
   155 U.S. 648 (1895) ............................................................................................................. 9

*Knoxville v. Netflix, Inc.*,
   656 S.W.3d 106 (Tenn. 2022) ..............................................................................................9

*M.S. News Co. v. Casado*,
   721 F.2d 1281 (10th Cir. 1983) ............................................................................................3

*McElhaney v. Williams*,
   81 F.4th 550 (6th Cir. 2023) ...............................................................................................11

*McNeilly v. Land*,
   684 F.3d 611 (6th Cir. 2012) ..............................................................................................12

*Michael M. v. Superior Ct.*,
   450 U.S. 464 (1981) .............................................................................................................5

*Miller v. California*,
   413 U.S. 15 (1973) .................................................................................................1, 2, 3, 8

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ........................................................................................................2, 14

*Moose Lodge No. 107 v. Irvis*,
   407 U.S. 163 (1972) ............................................................................................................12

*New York v. Ferber*,
   458 U.S. 747 (1982) ...................................................................................................7, 8, 13

*Nixon v. United States*,
   506 U.S. 224 (1993) ..............................................................................................................6

*Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................................................................13

*Olsen v. Nebraska ex rel. W. Reference & Bond Ass'n*,
   313 U.S. 236 (1941) ..............................................................................................................2

*Paris Adult Theatre I v. Slaton*,
   413 U.S. 49 (1973) ...........................................................................................................4, 6

*People v. Finkelstein*,
   9 N.Y.2d 342 (N.Y. 1961) ....................................................................................................9

iii

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) ...................................................................................................5

*Sable Commc'ns of Cal., Inc. v. FCC*,
  492 U.S. 115 (1989) ...................................................................................................7

*State v. Davis*,
  940 S.W.2d 558 (Tenn. 1993) ....................................................................................5

*Thompson v. DeWine*,
  976 F.3d 610 (6th Cir. 2020) ............................................................................13, 14

*United States v. Hugs*,
  109 F.3d 1375 (9th Cir. 1997) ..................................................................................12

*United States v. O'Brien*,
  391 U.S. 367 (1968) ...................................................................................................5

*United States v. Stevens*,
  559 U.S. 460 (2010) ...................................................................................................8

*Upper Midwest Booksellers Ass'n v. City of Minneapolis*,
  780 F.2d 1389 (8th Cir. 1985) ....................................................................................3

*Ward v. Rock Against Racism*,
  491 U.S. 794 (1989) ...................................................................................................8

*Williams-Yulee v. Fla. Bar*,
  575 U.S. 433 (2015) ...................................................................................................7

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .......................................................................................................2

*Wurzelbacher v. Jones-Kelley*,
  675 F.3d 580 (6th Cir. 2012) ....................................................................................11

*Young v. Am. Mini Theaters*,
  427 U.S. 50 (1976) .....................................................................................................3

# **INTRODUCTION**

Murfreesboro City Counsel, in response to concerns from its constituents, enacted Ordinance 23-O-22 (the "Ordinance") to prevent the exposure of obscene material to minors in public spaces. The Ordinance cross-references and incorporates other statues, including Murfreesboro City Code Section 21-71 (the "1977 Definition") which lists "homosexuality" under the definition of "sexual conduct." On October 19, 2023, City Council met and unanimously revised the 1977 Definition to strike the term "homosexuality." The revised 1977 Definition is set to take final effect on November 17, 2023. *See* Exhibit A. To be clear, the City does not intend to blanketly include LGBTQ+ advocacy materials or same-sex handholding within the Ordinance's definition of "sexual conduct." The Ordinance does not ban handholding, pride parades, or drag shows. The Ordinance codifies constitutional obscenity standards into City code to prevent indecent conduct from reaching minors in public places.

As revised, the Ordinance complies with First Amendment jurisprudence. In *Miller v. California*, 413 U.S. 15, 23-24 (1973), the Court "categorically settled" that "obscene material is unprotected by the First Amendment" and set basic guidelines for obscenity standards. Further, the First Amendment unquestionably allows States to "protect the welfare of children and to see that they are safeguarded" from obscene material in public spaces. *See Ginsberg v. New York*, 390 U.S. 629, 640-41 (1968) (quotations omitted). By its text, the Ordinance merely incorporates these longstanding constitutional guideposts to provide "a measure to assist in the determination of conduct, materials, and events that may be judged as obscene or harmful to minors in accordance with the social morals of the community" and "promote public decency and maintain a family-friendly environment in public places and protect against potential harm to minors."

The question here is not "the wisdom, need, or appropriateness" of the Ordinance. *Olsen v. Nebraska ex rel. W. Reference & Bond Ass'n*, 313 U.S. 236, 246 (1941). The question is whether the Ordinance comports with First Amendment obscenity law with respect to minors. It is well established that statutes prohibiting minors from accessing content that is obscene as to minors are permissible so long as adults can still obtain the speech. That is precisely what the Ordinance sets out to address, and the Court may not "arbitrarily depriv[e] the States of a power reserved to them under the Constitution, a power which they have enjoyed and exercised continuously from before the adoption of the First Amendment to this day." *Miller*, 413 at 29.

## ARGUMENT

The Court should deny Plaintiff's request for a preliminary injunction. An injunction is "drastic and extraordinary" relief that "should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). To prevail, the Plaintiff must establish (1) a likelihood of success on the merits; (2) irreparable injury in the absence of preliminary relief; (3) that the equities tip in favor of the Plaintiff; and (4) that an injunction is in the public interest. *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020) (quotations omitted). Importantly, the Plaintiff must establish all four factors to warrant relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Even then, this Court has discretion in warranting appropriate relief. *See Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). Plaintiffs have not met any of the four factors, and the Court should not grant the injunction.

**I.  PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS.**

    **A. Strict Scrutiny is Not Applicable Because the Time-Place-Manner Standard Governs Review, and the Ordinance Satisfies this Standard.**

At issue is a City Ordinance that prohibits, in public places, material that is obscene as to minors. Under *Miller*, obscene material is not protected by the First Amendment so long as a three part test is satisfied: "(a) whether the average person applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Miller*, 413 at 24. Further, "States have a legitimate interest in prohibiting . . . obscene material when the mode of dissemination carries with it a significant danger of . . . exposure to juveniles." *Id.* At 18-19. Where courts are analyzing unprotected speech as to minors, the application of heightened scrutiny is routinely declined. *Am. Booksellers v. Webb*, 919 F.2d 1493, 1501-02 (11th Cir. 1990). The time-place-manner regulation, or a similar balancing test, is more apt in evaluating restrictions on material that is "harmful to minors." *Id.*; *see also, e.g., Young v. Am. Mini Theaters*, 427 U.S. 50, 63 n.18 (1976); *Upper Midwest Booksellers Ass'n v. City of Minneapolis*, 780 F.2d 1389, 1394 (8th Cir. 1985); *M.S. News Co. v. Casado*, 721 F.2d 1281, 1288 (10th Cir. 1983).

In this case, the time-place-manner standard is the appropriate standard of review because the Ordinance's purpose is to protect minors from obscene content in public spaces – a state interest that the Court has recognized as consistent with the First Amendment. *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 234, 252 (2002) (stating that the First Amendment right to speech is not without limitation where that speech may reach an audience that includes children). Judicial speculation into the alleged intent behind the Ordinance is inappropriate to warrant strict scrutiny, and the secondary-effects doctrine also cuts against the application of strict scrutiny. Accordingly, the time-place-manner standard governs review, and the Ordinance is constitutional under this standard.

3

### i. The revised Ordinance is not viewpoint-based, so strict scrutiny is inappropriate.

Plaintiffs allege that strict scrutiny is the appropriate standard of review because the Ordinance is viewpoint based for incorporating the 1977 Definition which, prior to revision, included "homosexuality" in the definition of "sexual conduct." Defendants agree that the use of the term "homosexuality" in defining "sexual conduct" is inappropriate as there is nothing inherently sexual about an individual's sexual orientation. As such, the 1977 Definition has been unanimously revised to strike the term "homosexuality" from the definition of "sexual conduct" to better align the definition with modern legal precedent and understanding. Subject to the severability clause found in paragraph F of the Ordinance, the revised provisions, sentences, and clauses of the Ordinance are constitutional and shall remain as enacted. *See Brockett v. Spokane Arcades*, 472 U.S. 491, 505 (1985) (holding that a statute is not to be declared unconstitutional in its entirety if the unconstitutional provisions are severable and the legislature would have passed the statute without the severed portions).

Plaintiff states that even with "homosexuality" struck from the definition, the Ordinance is still subject to strict scrutiny as being content based. Plaintiff claims that the statute limits "any conduct or content that is suggestive or sexual in nature." However, the Ordinance does not limit *any* conduct, but only conduct that meets the Ordinance's modified *Miller* standard – speech indecent as to minors in accordance with the social morals of the community – a state interest that has long been recognized by courts. *See Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 57 (1973) ("[W]e have often pointedly recognized the high importance of the state interest in regulating the exposure of obscene materials to juveniles and unconsenting adults").

Nor does the Ordinance give the City "unfettered discretion" in determining what is harmful to minors. The Ordinance should be "read in context of the entire statute, without any

4

forced or subtle construction which would extend or limit its meaning." *State v. Davis*, 940 S.W.2d 558, 561 (Tenn. 1993). The explicit purpose of the Ordinance is to "provid[e] a measure to assist in the determination of conduct, materials, and events that may be judged as obscene or harmful to minors." Read in context of the cross-references, the Ordinance associates itself with state statutes regulating disorderly conduct, obscenity, drugs, and riots, alongside its own definition of indecent conduct. There is not "unfettered discretion" in its application because the Ordinance is limited to constitutionally exempt obscenity as defined and referenced. Accordingly, because the statute is not viewpoint based and seeks only to regulate obscene conduct related to minors in accordance with First Amendment standards, this Court should not apply strict scrutiny.

> ii. **The stated purpose of the Ordinance forecloses judicial speculation into the City's supposed purpose.**

Plaintiff also asserts strict scrutiny should apply because the City's Ordinance was enacted for an impermissible purpose. Courts regularly reject this kind of speculation. "Inquiries into congressional motives or purposes are a hazardous matter," and the "Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *United States v. O'Brien*, 391 U.S. 367, 383 (1968). Plaintiff alleges that the Ordinance was enacted by two bad actors with illicit motives; however, "the search for the 'actual' or 'primary' purpose of a statute is likely to be elusive," because "individual legislators may have voted for the statute for a variety of reasons." *Michael M. v. Superior Ct.*, 450 U.S. 464, 469-70 (1981). Importantly, courts look to the law's *stated* "justification for the government regulation," not isolated "statements" by legislators purportedly showing "an illicit motive in enacting the law." *Erie v. Pap's A.M.*, 529 U.S. 277, 292-95 (2000); *see also Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015) (citing *United States v. Eichman*, 496 U.S. 310, 314-15 (1990) (looking to the government's "asserted interest")).

5

As indicated above, the impermissible use of the term "homosexuality" as it is incorporated by cross-reference has since been deleted from the 1977 Definition. The Ordinance as severed is constitutional and should not be struck down because of an alleged illicit legislative motive. The text – "the best indicator of intent," *Nixon v. United States*, 506 U.S. 224, 232 (1993) – explicitly reads that the purpose of the Ordinance is to "maintain a family-friendly environment in public places and protect against potential harm to minors," which is settled as a highly important state interest. *See Paris Adult Theater*, 413 U.S. at 57 (recognizing the "high importance" of regulating obscene material as to minors and unconsenting adults). Plaintiff's discussion of Defendants McFarland and Tindall's comments depart from the well-established principle that "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2256 (2022). Even if an illicit motive were at play, there remains constitutional, permissible reasons why other members voted in favor of the Ordinance. Because the stated purpose of the Ordinance is a longstanding, constitutionally permissible purpose, strict scrutiny is not warranted.

### iii. The secondary-effects doctrine cuts against the application of strict scrutiny.

To the extent that this Court considers the conduct obscene, there is additional reason to apply a lower level of scrutiny. Under the Supreme Court's secondary-effects doctrine, "the government [can] accord differential treatment to a content-defined subclass of speech [if] that subclass [is] associated with specific 'secondary effects' of the speech." *Daunt v. Benson*, 956 F.3d 396, 420 (6th Cir. 2020). In protecting children from obscene content, the Ordinance inherently addresses the secondary effects of exposure to such content, such as negative psychological effects associated with viewing obscene content at a young age. This is not to say that the events Plaintiff advocates for are inherently obscene or prone to harming minors, but only to say that obscene

6

content as it relates to minors – what the Ordinance regulates – has secondary effects warranting legislation to a lower level of scrutiny.

### iv. The Ordinance satisfies the applicable time-place-manner standard.

Under the applicable time-place-manner standard, the Ordinance satisfies review. The ordinance furthers a government interest of the utmost importance (protecting children from obscenity) and leaves open alternative avenues of communication (only applying in public spaces). *See City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 47 (1986). The Court has indicated "[i]t is evident beyond the need for elaboration that a State's interest in safeguarding the physical and psychological well-being of a minor is compelling." *New York v. Ferber*, 458 U.S. 747, 756-57 (1982) (quotations omitted). The interest "extends to shielding minors from the influence" of speech "that is not obscene by adult standards." *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). Thus, binding precedent resolves the question of whether a compelling interest exists here. *See id.; FCC v. Pacifica Found.*, 438 U.S. 726, 749-50 (1978). And because the Ordinance is only in effect in public spaces, alternative avenues of communication, such as private venues, remain open.

Even if Plaintiff's First Amendment claim warranted strict scrutiny, the Ordinance would survive because it is "narrowly tailored to serve a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015). The Ordinance addresses the compelling interest of shielding minors from exposure to obscene material in public spaces and applies to "a narrow slice of speech" – speech that is obscene to minors under an adapted *Miller* test. *Id.* at 452. Notably, the Ordinance does not *ban* speech, it merely requires obscene speech to occur off public property, such that the potential exposure to minors is curbed. The Act thus "tightly fits the State's compelling interest" by "limiting children's exposure," while still allowing adults, and even children, to view the

7

content if it occurs off of City property. *Crawford v. Lungren*, 96 F.3d 380, 337 (9th Cir. 1996) (holding that a restriction on adult-oriented publications satisfied strict scrutiny).

### B. The Ordinance is Not Unconstitutionally Vague or Unconstitutionally Overbroad.

The Due Process Clause's "void for vagueness" or "overbreadth" doctrines do not apply to the Ordinance. A "person of ordinary intelligence" must have "a reasonable opportunity to know what is prohibited" by law, *Grayned v. Rockford*, 408 U.S. 104, 108 (1972), but "perfect clarity and precise guidance have never been required." *Ward v. Rock Against Racism*, 491 U.S. 794 (1989). The Supreme Court has also rejected challenges to obscenity laws as they apply to minors. *See Ginsberg*, 390 U.S. at 643 (stating that the definition of "harmful to minors" provides adequate notice to the public on what conduct is prohibited). Additionally, the overbreadth doctrine only allows a court to strike a statute if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quotations omitted). Invalidating a statute pursuant to the overbreadth doctrine is a "last resort." *Ferber*, 458 U.S. at 769 (quotations omitted).

In this case, the Ordinance was enacted by elected representatives to incorporate into city code longstanding constitutionally permissible restrictions on speech in response to community outreach. In defining terms within the Ordinance, individual definitions are given alongside cross-references and incorporations of other Tennessee statutes, providing more clarity on what may fall under the Ordinance. The Court has held that the term "harmful to minors" provides sufficient notice to the public on what is prohibited under the statute, *Ginsberg*, 390 at 643, and that the limitations of the state law may be prescribed "as written or *construed*." *Miller*, 413 U.S. at 25 (emphasis added). Because the Ordinance is written with enough specificity, and because the Ordinance is to be construed "consistent with the First Amendment," the Ordinance avoids

8

vagueness problems. Additionally, the scienter requirement of "knowingly" as used throughout the Ordinance prevents individuals from incurring liability in the event that a person unknowingly engages in indecent behavior. *See People v. Finkelstein*, 9 N.Y.2d 342, 345 (N.Y. 1961) (explaining that the scienter requirement "indicates that only those who are in some manner aware of the character of the material they attempt to distribute should be punished").

Moreover, the overbreadth doctrine should not be used to invalidate the Ordinance. The Ordinance only applies in public spaces, which limits its application. Additionally, the Ordinance should be read within the Ordinance's "context and in the context of the . . . statutory scheme." *Knoxville v. Netflix, Inc.*, 656 S.W.3d 106, 110 (Tenn. 2022) (quotations omitted). In this case, the Ordinance's purpose is to provide an additional "measure to assist in the determination of conduct . . . that may be judged as obscene or harmful to minors" and references other statutory schemes concerning drugs, disorderly conduct, riots, and obscenity. Read in context, there is no overbreadth issue. Because "every reasonable construction must be resorted to in order to save a [legislative act] from unconstitutionality," the Ordinance must be upheld. *Hooper v. California*, 155 U.S. 648, 657 (1895).

### C. The Revised Ordinance is Not a Violation of the Equal Protection Clause or an Unlawful Bill of Attainder

Plaintiff states that the Ordinance's cross reference to the 1977 Definition, which formerly included the term "homosexuality" in the definition of "sexual conduct," violates the Equal Protection Clause and creates an unlawful Bill of Attainder. On October 19, 2023, City Council unanimously voted to delete the term "homosexuality" from the 1977 Definition. The 1977 Definition as revised will become final on November 17, 2023. *See* Exhibit A. With the discriminatory term removed, there is no Equal Protection violation nor does the Ordinance function as a Bill of Attainder.

## D. The City's Response to Plaintiff's Permit Request is not Unconstitutional

### i. The response does not function as a prior restraint.

The Plaintiff is also not likely to succeed on the merits because the City's response to Plaintiff's permit request is not a prior restraint. Under Murfreesboro City Code Section 21-65(A)(7)-(8), a special event permit may be denied by the City Manager on the grounds that the "organization . . . has on a prior occasion . . . violated the terms and conditions of a City permit" or if the "application contains a material falsehood, misrepresentation or omission." Accordingly, Defendant City Manager Craig Tindall indicated in a letter dated October 17, 2022 that he would deny future special event permits because the 2022 event featured performers dancing in a sexually suggestive manner, resulting in the event being unsuitable for "all ages" contrary to what Plaintiff's application indicated.

Despite the letter, in practicality, negotiation and discussion of the 2023 event began almost immediately after the letter was sent. Important to Defendant Tindall was an assurance that Plaintiff would take steps to prevent sexually suggestive and indecent conduct from reoccurring. On July 20, 2023, following many discussions between parties, the City acting through its City Manager indicated to Plaintiff that it was awaiting assurance that performers would refrain from engaging in sexually suggestive conduct. These assurances were not provided by Plaintiff, and ultimately, Plaintiff hosted the event at a different location within the city limits of Murfreesboro. The permit was not denied but was merely awaiting assurances from Plaintiffs that indecent behavior would not reoccur during the 2023 event. Moreover, the 2023 event still occurred within City limits, so an alleged prior restraint did not actually restrain any speech.

### ii. The City did not retaliate against Plaintiff for protected First Amendment activity.

The City did not retaliate against Plaintiff for the exercise of a First Amendment right because the conduct the City sought to regulate was not protected by the First Amendment. A First Amendment retaliation claim requires the plaintiff make three showings: "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Only protected speech is barred from retaliation under the First Amendment. *McElhaney v. Williams*, 81 F.4th 550, 557 (6th Cir. 2023).

The Plaintiff must first show that it engaged in constitutionally protected conduct. While it may be true that the event, overall, was family friendly, a video later surfaced of event performers dancing lewdly, grinding, and accepting cash tips for their performances in a public place where children were present. Because this conduct is exempt from the First Amendment as being obscene as to minors, it is not constitutionally protected speech. Thus, Plaintiff cannot establish the first prong of its retaliation claim.

Second, while an adverse action was taken, the action would not "deter a person of ordinary firmness from continuing to engage in that conduct" because the conduct was not protected and should not have been engaged in to begin with. The mere occurrence of an adverse action does not automatically indicate the action was taken in retaliation. *See Egbert v. Boule*, 142 S. Ct. 1793, 1807 (2022) ("A plaintiff can turn practically any adverse action into grounds for a retaliation claim."). Finally, the adverse action was not motivated by protected conduct. The action was taken only after an inappropriate video surfaced and community members began expressing concern about children attending a show on City property that featured obscenity as exempt from the First

11

Amendment. The City appropriately responded after learning of indecent behavior occurring on public property in violation of city ordinances and state statutes. Therefore, the City's policy cannot be considered retaliation.

### iii. Plaintiff does not have standing.

To the extent this Court determines that Plaintiff did not apply for a permit, Plaintiff is limited to facial challenges only. A party may not claim that a regulation, such as a permit procedure, violates the Constitution unless it has availed itself of the procedure. *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 171 (1972) (holding that the plaintiff was without standing to litigate membership practices of a facility he was not a member of); *see also United States v. Hugs*, 109 F.3d 1375, 1378 (9th Cir. 1997). In this case, Plaintiff is limited to facial challenges only because it did not avail itself of the City's permitting process. For Plaintiff's 2023 event, Plaintiff made an informal information request only. Therefore, Plaintiff is precluded from challenging the underlying administrative scheme.

## II. THE OTHER EQUITABLE FACTORS FAVOR THE STATE.

### A. Plaintiff Cannot Establish Irreparable Harm

Plaintiff cannot demonstrate irreparable harm. For one, Plaintiff's First Amendment claim lacks merit, *see supra* Part I, so Plaintiff's claim of irreparable harm for an alleged violation of First Amendment rights also fails. *McNeilly v. Land*, 684 F.3d 611, 621 (6th Cir. 2012). Plaintiff argues that the Ordinance is chilling speech and expression, but the Ordinance seeks only to address obscene conduct as to minors, which has long been exempt from the First Amendment. No new speech is being chilled because the Ordinance is merely instituting a modified *Miller* standard. Further, the alleged prior restraint that prompted this lawsuit never restrained anything because the Plaintiff ultimately hosted its event in Murfreesboro city limits. And although the letter

12

from the City Manager indicated that future permits were going to be denied, in practicality, discussion and negotiation on hosting the event began almost immediately after the letter was sent, and Plaintiff never obtained a permit only because Plaintiff failed to provide assurances that indecent conduct would not occur on City property. Therefore, Plaintiff is not able to establish irreparable harm.

### B. The Equities Favor Denying Injunctive Relief

The remaining factors – harm to the opposing party and the public interest – "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors also favor Defendants. Generally, where "a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Thompson v. DeWine*, 976 F.3d 610, 619 (6th Cir. 2020) (cleaned up). This point is particularly salient as the Ordinance was enacted in direct response to concerns from constituents. Moreover, the guideline that courts "should pay particular regard for the public consequences in employing the extraordinary remedy of an injunction" should be especially prominent where the public consequence includes harm to children. *Winter v. Nat. Res. Def. Counsil*, 555 U.S. 7, 24 (2008).

The State has a well-recognized, compelling interest "in safeguarding the physical and psychological well-being of . . . minor[s]." *Ferber*, 458 U.S. at 756-57 (quotations omitted). Even in areas of constitutionally protected rights, the "physical and emotional well-being of youth" has prevailed. *Id.* The Ordinance furthers this important interest by shielding children from exposure to indecent materials in public places. Dozens of Murfreesboro citizens called on City officials to carry out the public interest of protecting children from obscene content, and "[i]t's in the public interest that [this Court] give effect to the will of the people by enforcing the laws they and their

13

representatives enact." *Thompson*, 976 F.3d at 619. This Court should decline to grant the "drastic and extraordinary remedy" of injunctive relief. *Monsanto Co.*, 561 U.S. at 165.

## CONCLUSION

The Court should deny the preliminary injunction and enter judgment in favor of Defendants.

Respectfully submitted,

**/s/ *Robert M. Burns***
Robert M. Burns, #15383
Samantha A. Burnett, #37250
HOWELL & FISHER, PLLC
3310 West End Avenue, Suite 550
Nashville, TN 37203
rburns@howell-fisher.com
sburnett@howell-fisher.com
(615)244-3370

# CERTIFICATE OF SERVICE

I certify that the foregoing was filed electronically on November 15, 2023. Notice of this filing will be sent by operation of the Court's electronic filing system to:

| | |
|---|---|
| Alex Little, # 029858<br>Burr Forman LLP<br>222 Second Avenue South, Suite 2000<br>Nashville, TN 37201<br>alex.little@burr.com<br><br>Stella Yarbrough, # 033637<br>Lucas Cameron-Vaughn, # 036284<br>Jeff Preptit, # 038451<br>ACLU Foundation of Tennessee<br>P.O. Box 120160<br>Nashville, TN 37212<br>syarbrough@aclu-tn.org<br>lucas@aclu-tn.org<br>jpreptit@aclu-tn.org<br><br>Li Nowlin-Sohl, (*pro hac*)<br>American Civil Liberties Union Foundation<br>125 Broad St.<br>New York, NY 10004<br>lnowlin-sohl@aclu.org<br><br>Michael P. Robotti, (*pro hac*)<br>Jacquelyn N. Schell, (*pro hac*)<br>Catherine I. Seibel, (*pro hac*)<br>D. Alan White, (*pro hac*)<br>Andrew M. Hensley, (*pro hac*)<br>Ballard Spahr LLP<br>1675 Broadway, 19th Floor<br>New York, NY 10019-5820<br>robottim@ballardspahr.com<br>schellj@ballardspahr.com<br>seibelc@ballardspahr.com<br>whiteda@ballardspahr.com<br>hensleyd@ballardspahr.com<br><br>D. Alan White, (*pro hac*)<br>BALLARD SPAHR LLP<br>999 Peachtree Street NE, Suite 1600<br>Atlanta, GA 30309<br>Ph: (678) 420-9300<br>whiteda@ballardspahr.com | Kristin E. Berexa<br>Cassandra M. Crane<br>FARRAR & BATES, LLP<br>12 Cadillac Drive, Suite 480<br>Brentwood, TN 37027<br>ccrane@fbb.law<br>*Attorneys for Defendants*<br>*McFarland & Tindall,*<br>*in their individual capacities* |

/s/ **Robert M. Burns**

15

Case 3:23-cv-01044    Document 38    Filed 11/15/23    Page 20 of 20 PageID #: 380