## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **TENNESSEE EQUALITY PROJECT FOUNDATION, INC.,** | |
| **Plaintiff,** | **Case No. 3:23-cv-01044** |
| **v.** | |
| **THE CITY OF MURFREESBORO, et al.,** | |
| **Defendants.** | |

## MEMORANDUM OF LAW IN OPPOSITION TO
## JOINT MOTION TO DISMISS FILED ON BEHALF OF
## INDIVIDUAL DEFENDANTS

**Ballard Spahr LLP**
1675 Broadway, 19th Floor
New York , NY 10019-5820

**American Civil Liberties Union Foundation**
125 Broad St.
New York, NY 10004

**ACLU Foundation of Tennessee**
P.O. Box 120160
Nashville, TN 37212

**Burr Forman LLP**
222 Second Avenue South, Suite 2000
Nashville, TN 37201

*Counsel for Plaintiff*
*Tennessee Equality Project Foundation, Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES....................................................................................ii

INTRODUCTION...................................................................................................1

BACKGROUND....................................................................................................3

LEGAL STANDARD ............................................................................................7

ARGUMENT .........................................................................................................7

I.      TEP MORE THAN ADEQUATELY PLED COUNTS XII THROUGH XIV AGAINST MCFARLAND IN HIS INDIVIDUAL CAPACITY ...................................7

      A.      Under the Correct Legal Standard for Individual Liability for Section 1983 Claims, TEP Need Only Plead McFarland's Implicit Approval, Acquiescence in or Encouragement of the Unconstitutional Actions ..................8

      B.      TEP's Complaint More Than Adequately Pleads McFarland's Unconstitutional Actions ....................................................................................9

II.     THE COURT SHOULD DENY MCFARLAND'S MOTION TO DISMISS COUNTS I THROUGH XI AGAINST HIM IN HIS INDIVIDUAL CAPACITY AS MOOT ............................................................................................................13

III.    THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE NOT DUPLICATIVE OF THE CLAIMS AGAINST THE CITY ..................................................................................................15

CONCLUSION....................................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anders v. Cuevas*,
   984 F.3d 1166 (6th Cir. 2021) ............................................................. 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................... 7, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................ 7

*Cady v. Arenac Cty.*,
   574 F.3d 334 (6th Cir. 2009) ......................................................... 17, 18

*Canary v. Osborn*,
   211 F.3d 324 (6th Cir. 2000) ............................................................. 14

*Denius v. Dunlap*,
   330 F.3d 919 (7th Cir. 2003) ............................................................... 4

*Flagg v. City of Detroit*,
   715 F.3d 165 (6th Cir. 2013) ................................................... 2, 8, 9, 10

*Friends of Georges v. Mulroy*,
   No. 2:23-cv-02163-TLP-tmp, 2023 U.S. Dist. LEXIS 96766 (W.D. Tenn.
   June 2, 2023) ............................................................................... 13, 17

*Gammarino v. Sycamore Twp.*,
   No. 1:22-cv-200, 2023 U.S. Dist. LEXIS 20994 (S.D. Ohio Feb. 7, 2023) ........... 14

*Goodwin v. Summit Cty.*,
   703 F. App'x 379 (6th Cir. 2017) ........................................................ 16

*Guidon v Twp. of Dundee*,
   488 F. App'x 27 (6th Cir. 2012) ......................................................... 14

*Hardin v. Reliance Tr. Co.*,
   No. 1:04 CV 2079, 2006 U.S. Dist. LEXIS 70818 (N.D. Ohio Sept. 28, 2006) ........ 4

*Mikel v. Quin*,
   58 F.4th 252 (6th Cir. 2023) ............................................................. 15

*Monell v. Dep't of Soc. Servs. of NY*,
   436 U.S. 658 (1978) ....................................................................... 15

*Newberry v. Silverman*,
    789 F.3d 636 (6th Cir. 2015) ............................................................... 12

*Pike v. Helton*,
    No. 3:22-cv-00537, 2023 U.S. Dist. LEXIS 170259 (M.D. Tenn. Sep. 25,
    2023) ...................................................................................................... 10

*Pusey v. City of Youngstown*,
    11 F.3d 652 (6th Cir. 1993) ..................................................... 16, 17, 18

*S. Utah Drag Stars v. City of St. George*,
    No. 4:23-cv-00044-DN-PK, 2023 U.S. Dist. LEXIS 105876 (D. Utah June 16,
    2023) ...................................................................................................... 17

*Woodlands Pride v. Paxton*,
    Civ. No. H-23-2847, 2023 U.S. Dist. LEXIS 171268 (S.D. Tex. Sep. 26,
    2023) ................................................................................................ 15, 17

*Yerkes v. Ohio State Highway Patrol*,
    455 F. Supp. 3d 523 (S.D. Ohio 2020) ........................................ 2, 7, 8

*Ex parte Young*,
    209 U.S. 123 (1908) .............................................................................. 15

**Statutes**

42 U.S.C. § 1983 ............................................................................... *passim*

Tennessee Statutes, tit. 39, ch. 17 ......................................................... 17

**Other Authorities**

Fed. R. Civ. P. 12 ..................................................................................... 9

Tenn. Const. art. I, § 8 .............................................................................. 5

Tenn. Const. art. I, § 19 ......................................................................... 5, 6

Tenn. Const. art. XI, § 8 ............................................................................ 5

U.S. Const. amend. I ......................................................................... 5, 6, 10

U.S. Const. amend. XI ........................................................................ 15, 18

U.S. Const. amend. XIV ...................................................................... 5, 12

U.S. Const. art. I, §10 ............................................................................... 6

# INTRODUCTION

Defendants Mayor Shane McFarland, City Manager Craig Tindall, Chief of Police Michael Bowen, Director of Code Enforcement Kevin Jones, and City Council Members Jami Averwater, Madelyn Scales Harris, Austin Maxwell, Kirt Wade and Shawn Wright (collectively, the "Individual Defendants") jointly move to dismiss all claims that Tennessee Equality Project Foundation, Inc. ("TEP" or "Plaintiff") filed against them in their official capacities. *See* Mem. in Supp. of Joint Mot. to Dismiss Filed on Behalf of Individual Defs. ("Ind. Defs.' Br.") (ECF 37); Compl. (ECF 1) Counts I–XI (filed against all Individual Defendants in their official capacities); Compl. Counts XII–XIV (filed against McFarland and Tindall in their official capacities). In addition, Defendant McFarland seeks to dismiss all claims filed against him in his individual capacity. *See id.* For the reasons set forth below, the Court should deny the Individual Defendants' joint motion in its entirety.

Turning first to Mayor McFarland's motion to dismiss the claims against him in his individual capacity, he tellingly does not challenge the merits of TEP's claims in Counts XII through XIV. Notably absent from McFarland's motion is any claim that TEP failed to adequately allege that the City and other City Officials violated TEP's constitutional rights when the City instituted a discriminatory policy denying TEP all future event permits, including for the 2023 BoroPride Festival. Instead, McFarland merely argues that *he* should not be the one to blame for the City's discriminatory and unconstitutional treatment of TEP. Rather, McFarland points directly at City Manager Craig Tindall as the bad actor, as the following passage from McFarland's brief illustrates:

> TEP alleges that City Manager Tindall—not Mayor McFarland—sent a "denial letter" to TEP following the 2022 BoroPride festival. TEP also alleges that City Manager Tindall—not Mayor McFarland—circulated a memo to the City's Parks & Recreation Department prohibiting the issuance of permits to TEP in the future.

TEP further alleges that City Manager Tindall only informed [the] City Council, including Mayor McFarland, of the "denial letter" after the fact.

Ind. Defs.' Br. at 10–11 (cleaned up).

But while McFarland claims that he was a mere bystander and passive observer to the unconstitutional actions taken by *his* subordinate in *his* administration, the documentary record set forth in the Complaint is to the contrary. Indeed, rather than supporting Mayor McFarland's claim that he was totally ignorant of what was happening in his own administration, the Complaint indicates that he was a key architect of the City's unconstitutional policy, intentionally directing actions that he knew violated the constitutional rights of TEP and the LGBTQ+ community it represents. As discussed below, the Complaint more than satisfies the applicable pleading standard in the Sixth Circuit—which McFarland fails to cite in his brief. Under that standard, TEP need only allege that McFarland at least encouraged, implicitly authorized, approved, or knowingly acquiesced in the misconduct, a standard that TEP has more than satisfied. *See Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013); *accord Yerkes v. Ohio State Highway Patrol*, 455 F. Supp. 3d 523, 535 (S.D. Ohio 2020) (denying motion to dismiss claim for violation of Equal Protection Clause against individual defendants, citing *Flagg*).

Moreover, while McFarland attempts to explain away and minimize his actions, the Court need look no further than the introduction of his own brief—which highlights key paragraphs from TEP's Complaint—to see that he was a key architect of the City's unconstitutional policy. Ind. Defs.' Br. at 2–3. These allegations include specific details about how Mayor McFarland gathered anti-drag complaints from constituents and sent that information to subordinate City Officials, including City Manager Tindall, which encouraged the formulation of the policy and formed the foundation for the policy instituted less than a month later. Id. at 2–3 (citing Compl. ¶¶ 60, 61, 63, 67, 68, 70, 71). Aside from these actions, the Complaint also demonstrates that McFarland stayed

involved through finalization of the policy and, at the very least, implicitly approved it. Compl. ¶ 74. Plaintiff expects that discovery regarding additional written and oral communications with McFarland will further demonstrate McFarland's intentional and unconstitutional actions.

To the extent McFarland separately moves to dismiss Counts I through XI against him in his individual capacity, the Court should deny that motion as moot. TEP did not sue him in his individual capacity in those counts. Insofar as McFarland and the other Individual Defendants seek to dismiss all counts against them in their official capacities as duplicative of the claims against the City, the Court should deny that motion. The claims are not duplicative, because the Individual Defendants are responsible for enforcing the challenged Ordinance and policy as both state actors and city actors. TEP properly named them in their official capacities as state actors. Accordingly, for the reasons stated herein, the Court should deny the Individual Defendants' joint motion to dismiss in its entirety.

## **BACKGROUND**

This case arises out of the unconstitutional and discriminatory actions taken by the City of Murfreesboro and City Officials against TEP, a non-profit organization that advocates for the equal rights of LGBTQ+ people in Tennessee. Compl. ¶¶ 40–58. As set forth in the Complaint, in the days leading up to TEP's 2022 BoroPride Festival, a celebration of the LGBTQ+ community, a group of anti-drag activists contacted Mayor McFarland to oppose the event and the planned drag performances. *Id.* ¶¶ 59–63 & Ex. C. Mayor McFarland initially responded to those constituents, by correctly recognizing the constitutional rights of the City's LGBTQ+ community and stating that the City "do[es]n't get to pick and choose legally who can or who can't use City facilities." *Id.* ¶ 61 & Ex. C. The 2022 BoroPride Festival took place successfully on September 17, 2022 in the City with over 7,000 attendees. *Id.* ¶ 64.

Less than one week after the event, Mayor McFarland received more complaints from anti-drag activists, including social media posts with videos from the event that claimed to include indecent behavior. *Id.* ¶¶ 66, 67 & Exs. C, D. One message to Mayor McFarland accused him personally: "[y]ou allowed this." *Id.* ¶ 67 & Ex. C. In response, Mayor McFarland correctly explained that he "took an oath to our constitution" and he did not "have the authority to stop someone's freedom of speech or right to gather." *Id.* ¶ 68 & Ex. C. But the next morning, Mayor McFarland reconsidered his constitutional restraints, replying to the same individual that the social media content was "disturbing" and that he was investigating the event. *Id.* ¶ 69. Mayor McFarland, the top executive official in the City, forwarded the content to subordinate City Officials that same morning, including City Manager Tindall.[1] *Id.* ¶ 70 & Ex. E. In doing so, he intentionally set in motion the City's months-long campaign to silence the City's LGBTQ+ community by violating their constitutional rights. Less than a month later, the City sent a letter to TEP that "parroted" the talking points in the anti-drag social media content gathered by Mayor McFarland. *Id.* ¶¶ 70, 71. Relying on baseless claims that TEP violated state and city law, this letter announced the policy that TEP would be prohibited from receiving any future permits from the City, which Tindall memorialized in a separate memo sent to his boss Mayor McFarland and other City Officials. *Id.* ¶¶ 71–74 & Exs. F, H

Nevertheless, TEP again applied to host the 2023 BoroPride Festival at the same location previously held in the City. *Id.* ¶¶ 75–76 & Ex. I. The City refused to grant or deny the permit for

---

[1] The City Council consists of the Mayor and six members, and the rest of the City officials are subordinate to the City Council, including City Manager Tindall. *See* City of Murfreesboro, *Government Structure,* https://www.murfreesborotn.gov/1793/Departments (hereinafter "Murfreesboro Website"). The Court may take judicial notice of this website, which is the Murfreesboro City official website. *See Hardin v. Reliance Tr. Co.*, No. 1:04 CV 2079, 2006 U.S. Dist. LEXIS 70818, at *12 (N.D. Ohio Sept. 28, 2006) (the court may take judicial notice of government agency website) (citing *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003)).

months, even in response to a straightforward request from TEP. *Id.* ¶¶ 77–86. Ultimately, TEP had no choice but to hold the 2023 BoroPride Festival at a different location. *Id.* ¶¶ 91–94.

In addition to the City's unconstitutional and discriminatory policy and actions with respect to Plaintiff's permit application, TEP also alleged that the City violated TEP's rights by passing a "community decency" Ordinance[2] designed to eradicate drag performances within public spaces in the City. *Id.* ¶¶ 95–114. The Ordinance relies on and incorporates state law for its enforcement mechanisms, citing the State's disorderly conduct law to impose criminal penalties for conduct that violates the Ordinance. Compl. ¶ 108 & n.20; *id.* Ex. N, Part D(3) ("Any action prohibited under this section shall constitute disorderly conduct, and any Murfreesboro Police Officer, upon probable cause, may order a person to cease any conduct reasonably believed to violate this section. Failure to comply with such order shall be addressed in accordance with applicable state law."). The Ordinance tasks the Individual Defendants with enforcement of its provisions, as TEP alleged in its Complaint. Compl. ¶¶ 36–39.

On October 6, 2023, TEP filed this action. TEP alleged in Counts I through VI of the Complaint that the Ordinance is an unconstitutional restriction on speech in violation of the First Amendment to the U.S. Constitution and Article I, § 19 of the Tennessee Constitution; unconstitutionally overbroad and vague; and a violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and Article I, § 8 and Article XI, § 8 of the Tennessee Constitution. TEP alleged in Counts VII through XI that the 1977 Definition incorporated in the Ordinance is an unconstitutional restriction on speech, in violation of the First Amendment and Article I, § 19 of the Tennessee Constitution; violates the Equal Protection Clause and Article I, § 8 and Article XI, § 8 of the Tennessee Constitution; and is an unlawful Bill of

---

[2] Defined terms from the Complaint have the same meaning herein.

Attainder in violation of Article I, § 10 of the U.S. Constitution. TEP seeks only injunctive and declaratory relief under Counts I through XI against the City and all Individual Defendants in their official capacities. *Id.* ¶¶ 132, 142, 154, 172, 183, 197, 212, 225, 240, 253, 268. With respect to the City's policy of denying TEP event permits, TEP alleged in Counts XII through XIV that the policy is an unconstitutional restriction on speech and retaliation in violation of the First Amendment and was enacted with a discriminatory purpose in violation of the Equal Protection Clause.[3] TEP seeks injunctive and declaratory relief, as well as money damages against the City, McFarland and Tindall in their individual and official capacities under Counts XII through XIV.

On October 12, 2023, TEP filed a motion for a preliminary injunction against enforcement of (1) the Ordinance and the underlying 1977 Definition and (2) the City's discriminatory and retaliatory policy of denying TEP event permits. As of November 28, 2023, TEP's motion for a preliminary injunction is fully briefed, and that motion is under consideration by the Court.

After TEP filed this lawsuit and its preliminary injunction motion, the City, in effect, conceded that portions of the Ordinance are unconstitutional. On October 19, 2023, it repealed the 1977 Definition, which had effectively outlawed acts of homosexuality on City property. Defs.' Resp. to Pl.'s Mot. for Prelim. Inj., (ECF 38) at 1. That repeal went into effect on November 17, 2023. As a result of this repeal, TEP expects to voluntarily move to dismiss Counts VII through XI, challenging the 1977 Definition. It intends to proceed on Counts I through VI, challenging the Ordinance, and XII through XIV, challenging the City's unconstitutional policy.

---

[3] The Tennessee Constitution's protections for freedom of speech and equal protection track those outlined by the Federal Constitution and are addressed together herein. *See Knight v. Montgomery Cnty.*, 592 F. Supp. 3d 651, 670 (M.D. Tenn. 2022) ("Article I, Section 19 of the Tennessee Constitution has been 'construed' by the Tennessee Supreme Court 'to have a scope at least as broad as that afforded the freedoms of speech and of the press by the First Amendment.'" (quoting *State v. Mitchell*, 343 S.W.3d 381, 392 n.3 (Tenn. 2011))), *appeal dismissed*, 2022 U.S. App. LEXIS 18375 (6th Cir. May 11, 2022).

## LEGAL STANDARD

"In evaluating a complaint to determine whether it states a claim upon which relief can be granted, the trial court must construe it in favor of the plaintiff, accept the factual allegations contained in the pleading as true, and determine whether the factual allegations present any plausible claim." *Yerkes*, 455 F. Supp. 3d at 528 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Defendant may contest factual allegations at a later stage in the case, but not on a motion to dismiss. *Id.*

## ARGUMENT

### I. TEP MORE THAN ADEQUATELY PLED COUNTS XII THROUGH XIV AGAINST MCFARLAND IN HIS INDIVIDUAL CAPACITY

Mayor McFarland argues that the Court should dismiss Counts XII through XIV against him in his individual capacity, because TEP has not adequately pled his individual involvement in the deprivation of TEP's constitutional rights. Ind. Defs.' Br. 10–11. McFarland's argument fails for two reasons. First, McFarland does not correctly state the legal standard for what TEP must plead in terms of his involvement to adequately plead a Section 1983 claim. Second, and in any event, McFarland ignores factual allegations in the Complaint that clearly and directly tie McFarland to Counts XII through XIV and set forth his intentional deprivation of TEP's constitutional rights in violation of Section 1983. Accordingly, the Court should deny McFarland's motion with respect to Counts XII through XIV.

#### A. Under the Correct Legal Standard for Individual Liability for Section 1983 Claims, TEP Need Only Plead McFarland's Implicit Approval, Acquiescence in or Encouragement of the Unconstitutional Actions

McFarland, relying on *Iqbal*, states that he cannot be liable in his individual capacity because TEP "must present evidence that defendant, through his own actions, committed the tort or violated the U.S. Constitution or federal statute for which he has been sued." Ind. Defs.' Br. at

10 (citing *Iqbal*, 556 U.S. at 676). Under McFarland's theory, he is not liable because City Manager Tindall, not McFarland, ultimately took the last step in each bad act alleged. But McFarland's reliance on *Iqbal* is unavailing. Indeed, following *Iqbal*, the Sixth Circuit has recognized that direct participation by an individual in a constitutional violation can mean "encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself." *Flagg*, 715 F.3d at 174; *accord Yerkes*, 455 F. Supp. 3d at 535. The Complaint easily satisfied this controlling case law, which McFarland fails to cite in his brief.

TEP's Complaint is entirely consistent with *Iqbal*, which merely requires that a plaintiff not rely upon a theory of "supervisory liability" or vicarious liability to state a claim under Section 1983, because each Government official is "liable for his or her own misconduct." 556 U.S. at 677. TEP relies on no such vicarious liability theory. The Complaint identifies McFarland's direct involvement in the unconstitutional actions by his subordinate, City Manager Tindall. It does not claim he is liable solely by virtue of being his supervisor; rather, it alleges that he is liable for his own misconduct with respect to those violations. Compl. ¶¶ 270–308. Such allegations—which are based in part on McFarland's own written correspondence—are more than sufficient to maintain him as an individual defendant in this litigation, permitting TEP to uncover the full scope of his oral and written communications regarding his unconstitutional actions in discovery.

The thrust of McFarland's argument to the contrary is that he was blind as to what was happening in his own administration. McFarland points the finger at Tindall, claiming he is responsible for the constitutional violations, because Tindall, not McFarland, sent the memorandum memorializing the City's policy indefinitely barring TEP from using City property. McFarland further claims that it was Tindall, not McFarland, who ultimately denied TEP a permit for BoroPride 2023. Ind. Defs.' Br. at 10–11. In short, McFarland argues that, because it was

8

Tindall who was the "face" of the City's unconstitutional policy, only Tindall can be held accountable—even if McFarland was involved in making the actual decision to target TEP and deprive it of its constitutional rights.

But that is not the law. Section 1983 jurisprudence does not stretch so far to shield McFarland in this regard, and certainly not at the Rule 12(b)(6) stage: "encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct" by someone else (i.e., Tindall) constitutes "direct participation" in a constitutional violation. *Flagg*, 715 F.3d, at 174. As discussed in the next section below, TEP has more than satisfied that standard.

**B.    TEP's Complaint More Than Adequately Pleads McFarland's Unconstitutional Actions**

McFarland is wrong when he claims that "[t]he Complaint fails to allege . . . any affirmative actions taken by Mayor McFarland." Ind. Defs.' Br. at 11. Quite the opposite, as the Complaint alleges, Compl. ¶ 272, McFarland at the very least implicitly approved the memorandum that Tindall sent on October 17, 2022, formalizing its unconstitutional policy of denying permits to TEP. And, as discussed above, that allegation alone is sufficient to maintain McFarland in the suit under applicable Sixth Circuit law. But beyond just that allegation, TEP cited concrete documentary evidence of McFarland's role in the formulation of the policy that deprived TEP of its constitutional rights, *see, e.g.*, Compl., Exs. C, E, and the Complaint contains detailed allegations of his actions, some of which are even quoted by McFarland in his brief. TEP alleged in meticulous detail how McFarland gathered complaints by constituents about TEP's constitutionally protected speech at the 2022 BoroPride Festival and then provided that material to others—including his subordinates—within the City to formulate the unconstitutional policy. TEP further alleged that, under that policy, TEP's application for the 2023 BoroPride Festival was denied. In short, from the very beginning, McFarland was highly involved in the City's decision

9

to bow to pressure from anti-drag activists and to target TEP with a discriminatory policy. These allegations are more than sufficient to survive McFarland's motion to dismiss.

As a threshold matter, Mayor McFarland does not challenge that TEP adequately alleged the Constitutional violations in Counts XII through XIV as to the City and Tindall; rather, he only challenges his involvement in those Constitutional violations.[4] As discussed above, in the Sixth Circuit, TEP needs to allege only that McFarland encouraged, implicitly authorized, approved or knowingly acquiesced in the constitutional violations. *Flagg*, 715 F.3d, at 174. TEP's Complaint adequately pleads his involvement in each.

In Count XII, TEP alleged that McFarland, Tindall and the City imposed a policy that prohibited the issuance of any special event permits to TEP, which is an unconstitutional prior restraint on TEP's speech in violation of the First Amendment. Compl. ¶¶ 269–273. In Count XIII, TEP alleged that McFarland, Tindall and the City imposed a policy that prohibited the issuance of permits to TEP, and pursuant to this policy, TEP was denied a permit for the 2023 BoroPride Festival in violation of the First Amendment. *Id*. ¶¶ 280–289. In addition, Counts XII and XIII include a claim for First Amendment retaliation, because this policy was imposed in retaliation against TEP for its pro-LGBTQ+ messaging and its exercise of its First Amendment rights, namely, its inclusion of a drag performance at its 2022 BoroPride Festival. *Id*. ¶¶ 274–275, 290–292. Finally, Count XIV alleges that McFarland, Tindall, and the City imposed the policy with a discriminatory purpose, depriving TEP, a pro-LGBTQ+ organization, of its Equal Protection rights. *Id*. ¶¶ 294–308.

---

[4] To the extent McFarland attempts to raise new arguments on reply, such as that TEP's claims were not adequately pled in some other substantive respect, those arguments would be barred. *See, e.g., Pike v. Helton*, No. 3:22-cv-00537, 2023 U.S. Dist. LEXIS 170259, at *4 n.2 (M.D. Tenn. Sept. 25, 2023) (denying motion to dismiss, and declining to consider arguments raised for the first time in reply brief).

While McFarland claims that he was a mere bystander to the formation of the policy that is the basis of these constitutional violations, TEP alleged—citing documentary proof—that the decision to enact this unconstitutional policy was ***initiated by McFarland***. In the weeks leading up to the 2022 BoroPride Festival, Mayor McFarland received pressure from several anti-drag activists, who opposed the event and took issue with the planned drag performances. *Id*. ¶¶ 59–63. On September 6, 2022, one individual "URGE[D]" McFarland to stop the drag performances via email. *Id*. ¶ 60. In response, McFarland stated that the BoroPride Festival was a private event, and "[w]e don't get to pick and choose legally who can or who can't use City facilities." *Id*. ¶ 61. Nonetheless, Mayor McFarland continued to receive emails from constituents expressing anti-drag views leading up to the festival. *Id*. ¶¶ 62, 63. Following the event, Mayor McFarland received more emails from anti-drag activists and social media posts complaining that Mayor McFarland "allowed this" event to occur. *Id*. ¶¶ 66, 67.

Five days after the 2022 BoroPride Festival, in response to one of these emailed complaints, McFarland correctly explained:

> The City of Murfreesboro … do[es] not have the authority nor ability to stop a private gathering or something that is advertised to the public. As much as I disagree with different gatherings or activities, I legally do not have the authority to stop someone's freedom of speech or right to gather. I took an oath to our constitution and as long as someone is not breaking the law… the [sic] City doesn't have the authority to usurp someone's constitutional rights.

*Id*. ¶ 68. However, *the very next morning*, Mayor McFarland reconsidered his response, and he elected to disregard the constitutional rights of his LGBTQ+ constituents. He sent a follow-up email to that same individual in regards to a social media post and said: "I am looking into this video. This is disturbing." *Id*. ¶ 69. Later that same morning, Mayor McFarland sent an email to his subordinate City Manager Tindall and others, which included a link to the same social media post that was the subject of that email. *Id*. ¶ 70 & Ex. E. TEP's Complaint alleges that the letter

that Tindall drafted less than a month later "parroted many of the talking points" from these complaints and same social media posts. *Id.* ¶ 71. Under that policy, TEP's application for the 2023 BoroPride Festival was denied. *Id.* ¶¶ 282–286. In short, TEP alleged that, in response to pressure from anti-drag activists, Mayor McFarland initiated the City's review of TEP's speech at 2022 BoroPride, and he provided the source material for the unconstitutional, discriminatory policy that is the basis for Counts XII through XIV of TEP's Complaint. TEP expects that discovery regarding the time between McFarland's transmission of the anti-drag complaints to his subordinate, Tindall, and the issuance of the unconstitutional policy, will further support the documentary evidence to date of the Mayor's key role in establishing the policy. TEP also expects that discovery will show additional evidence of McFarland's involvement in the denial of TEP's permit request for the 2023 BoroPride Festival, pursuant to this policy.

For these reasons, the Court should not dismiss Counts XII through XIV of the Complaint against Mayor McFarland in his individual capacity. The allegations set forth above establish that the Mayor initiated the imposition of an unconstitutional, discriminatory policy that violated TEP's rights under the First and Fourteenth Amendments. He knowingly gathered anti-drag complaints and sent them to his subordinates to direct them to formulate the policy at issue that intentionally targeted TEP. Under this unconstitutional policy, TEP was denied a permit for its 2023 BoroPride Festival. The Court should deny Mayor McFarland's motion.[5]

---

[5] If the Court finds TEP's Complaint lacks sufficient factual allegations regarding McFarland's individual involvement (which it should not), the Court should dismiss the Complaint *without* prejudice, so that TEP can amend its Complaint to add greater detail. *See Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment."). Attached hereto as Exhibit 1 is an October 14, 2022 email from Tindall to McFarland with a draft of Tindall's October 17, 2022 letter to TEP, informing it that the City would deny future permits. Exhibit 1 is one example of additional evidence that TEP could add to an amended Complaint further demonstrating McFarland's involvement in imposing the

## II. THE COURT SHOULD DENY MCFARLAND'S MOTION TO DISMISS COUNTS I THROUGH XI AGAINST HIM IN HIS INDIVIDUAL CAPACITY AS MOOT

McFarland argues that the Court should dismiss the claims under Counts I through XI against him in his individual capacity because his actions under these counts are insulated by legislative immunity. Specifically, "[t]he only conduct attributed to Mayor McFarland under these causes of action is his legislative action of voting for the passage of and signing the Ordinance." Ind. Defs.' Br. at 7. The Court should deny his motion in this regard as moot.

To be clear, TEP does not assert Counts I through XI against Mayor McFarland or City Manager Tindall in their individual capacities. Under those Counts, Plaintiff seeks only injunctive relief. *See, e.g.*, Compl. ¶¶ 124, 132, 142, 154, 172, 183, 197, 212, 225, 240, 253, 268 (specifying relief sought under each Count I through XI). TEP cannot pursue injunctive relief against McFarland in his individual capacity with regards to the unconstitutional Ordinance; in his individual capacity, McFarland cannot be responsible for enforcing a law and therefore cannot be enjoined from doing so. *See, e.g.*, *Friends of Georges v. Mulroy*, No. 2:23-cv-02163-TLP-tmp, 2023 U.S. Dist. LEXIS 96766, at *8, *19–23 (W.D. Tenn. June 2, 2023).[6] In other words, Plaintiff did not assert Counts I through XI against McFarland in his individual capacity, as there would be no corresponding relief that the Court could grant against him. Plaintiff already made the point that it was not seeking injunctive relief against McFarland in his individual capacity to

_____

unconstitutional policy at issue. Exhibit 1 also demonstrates that McFarland's position in his motion to dismiss is disingenuous—as the sole recipient of Tindall's draft letter three days in advance, it is clear that McFarland *explicitly* approved the policy before it went into effect.

[6] The Court dismissed Defendant Steven Mulroy, District Attorney General, in that case in his individual capacity because no monetary damages were sought against him; that is not the case here. *Id.*, at *21.

McFarland's counsel in email correspondence on October 16, 2023 and on the record at the court conference on October 17, 2023.[7] Thus, it is unclear why this motion to dismiss was necessary.

The only relief that TEP seeks against McFarland in his individual capacity are monetary damages for Counts XII through XIV. The Complaint was clear on this point, explicitly stating where it sought relief against McFarland and Tindall in their individual capacities. In Counts XII through XIV, TEP specifically seeks "compensatory [damages], punitive damages, and attorney fees against the City, as well as McFarland and Tindall in their personal and official capacities." Compl. ¶ 270 (Count XII); *see id*. ¶¶ 293, 308 (same for Counts XIII and XIV); TEP's Prayer for Relief, ¶ 7 (seeking "Compensatory and punitive damages arising out of violations by Defendants the City, McFarland, and Tindall under 42 U.S.C. § 1983").

Thus, as Plaintiff does not seek relief against McFarland in his individual capacity in Counts I through XI, his arguments regarding legislative immunity and his individual capacity as to these Counts are moot.[8] The Court should deny his motion in this regard.

_____

[7] Attached hereto as Exhibit 2 is an email chain between counsel for McFarland and counsel for Plaintiff, wherein counsel for Plaintiff confirmed on October 16, 2023 that Plaintiff will not be seeking preliminary injunctive relief against the defendants in their personal capacities. Attached hereto as Exhibit 3 is an excerpt of the transcript of the October 17, 2023 telephone conference before Magistrate Judge Holmes, wherein counsel for Plaintiff confirmed in response to a query from the Court that Plaintiff is "not seeking injunctive relief against the City officials in their individual capacities because [Plaintiff's] understanding is they do not have the ability in their individual capacities to enforce this ordinance." ECF 44, at 34:20–24.

[8] McFarland does not argue that he is entitled to legislative immunity for Counts XII through XIV, which as discussed above, set forth claims against him related to the City's unconstitutional policy of denying TEP event permits. Nor could he argue that legislative immunity covers those administrative actions. *See, e.g.*, *Anders v. Cuevas*, 984 F.3d 1166, 1182–83 (6th Cir. 2021) (rejecting legislative immunity defense); *Canary v. Osborn*, 211 F.3d 324, 331 (6th Cir. 2000) (finding that Board's discussion of "personalized assessments of individual employees" rather than "impersonal budgetary analysis of various positions" suggested non-legislative action); *Guidon v Twp. of Dundee*, 488 F. App'x 27, 33–34 (6th Cir. 2012) (explaining that while passing zoning ordinance is legislative act, denial of building permit request is administrative act); *Gammarino v. Sycamore Twp.*, No. 1:22-cv-200, 2023 U.S. Dist. LEXIS 20994, at *16 n.7 (S.D. Ohio Feb. 7, 2023) (rejecting legislative immunity defense on motion to dismiss because if "the action singles

## III. THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE NOT DUPLICATIVE OF THE CLAIMS AGAINST THE CITY

The Individual Defendants argue that "it is redundant and unnecessary to name the Individual Defendants in their official capacities because the City is also a party." Ind. Defs.' Br. at 12. However, because the Ordinance is a hybrid City and State law, the Individual Defendants are incorrect that the claims set forth in Counts I through XI against them in their official capacities are duplicative of those against the City. Moreover, because McFarland and Tindall relied on state law in imposing the City's unconstitutional policy, they are similarly incorrect that the claims against them in their official capacities in Counts XII through XIV are duplicative. Accordingly, the Court should not dismiss those claims.

States are immune from suit under the Eleventh Amendment. However, in *Ex parte Young*, the Supreme Court created an exception to this rule to allow state actors to be sued for injunctive relief to remedy constitutional violations. *Ex parte Young*, 209 U.S. 123, 155–56 (1908). Thus, it is appropriate to bring official capacity suits against state actors that are charged with enforcing an unconstitutional law, and such suits are not duplicative, because no similar action can be brought against the State. *See Mikel v. Quin*, 58 F.4th 252, 257 (6th Cir. 2023) (commissioner was appropriately named as defendant in official capacity where Tennessee was immune from suit); *Woodlands Pride v. Paxton*, Civ. No. H-23-2847, 2023 U.S. Dist. LEXIS 171268, at *23 (S.D. Tex. Sept. 26, 2023) (finding that official capacity defendants were appropriately named where they had role to play in enforcing unconstitutional state law). By contrast, as the Individual Defendants correctly note, Ind. Defs.' Br., at 11, cities are not immune from suit. *Monell v. Dep't*

---

out specific individuals and affects them differently from others, it is administrative," and where based on allegations, "it appears the Township trustees made a specific determination directed solely at the Gammarinos' various properties").

*of Soc. Servs. of NY*, 436 U.S. 658, 690 (1978). Therefore, official capacity claims against city employees are duplicative of claims against the City. *Goodwin v. Summit Cnty.*, 703 F. App'x 379, 382–83 (6th Cir. 2017).

In this case, the Ordinance is a hybrid City and State law. While the City Council passed the Ordinance, it also relies on and incorporates state law for its enforcement mechanisms. In particular, the enforcement provisions of the Ordinance rely on the State's disorderly conduct law to impose criminal penalties for conduct that violates the Ordinance. Compl. ¶ 108 & n.20; *id*. Ex. N, Part D(3) ("Any action prohibited under this section shall constitute disorderly conduct, and any Murfreesboro Police Officer, upon probable cause, may order a person to cease any conduct reasonably believed to violate this section. Failure to comply with such order shall be addressed in accordance with applicable state law."). Thus, City Officials enforcing the Ordinance not only act on behalf of the City, but they also act as state actors enforcing state law. *See Pusey v. City of Youngstown,* 11 F.3d 652, 657 (6th Cir. 1993) ("[A] city official pursues her duties as a state agent when enforcing state law or policy.")

All of the Individual Defendants named in the Complaint have enforcement authority with respect to the Ordinance. The Ordinance specifically designates City Manager Tindall, Chief of Police Michael Bowen, and Director of Code Enforcement Kevin Jones as the City Officials charged with enforcing the Ordinance. *See* Compl. Ex. N, Part D(1) ("The Chief of Police shall be responsible for administering and enforcing the provisions of this Article. The City Manager may authorize other City departments to assist the Chief of Police in enforcing this Article."); *id.* Part E(3)–(7) (authorizing Chief of Police and Director of Code Enforcement to issue written notice of violation and City Manager to conduct hearings regarding alleged violation and issue final decision). Mayor McFarland and the City Council appoint the City Manager, and the City

Manager reports directly to them. *See* Murfreesboro Website. The Chief of Police and the Director of Code Enforcement ultimately report to the City Manager. *Id.* Thus, the Mayor and the City Council have ultimate authority over the City Officials charged with enforcement of the Ordinance.

Accordingly, all of the Individual Defendants act as both city and state actors with respect to enforcement of the Ordinance. *See Pusey,* 11 F.3d at 657 (holding that city prosecutor was state agent when enforcing state law); *Cady v. Arenac Cnty.*, 574 F.3d 334, 343 (6th Cir. 2009) (citing *Pusey,* and holding same for country prosecutor). Plaintiff may properly seek to enjoin each defendant from unconstitutionally enforcing state law pursuant to the Ordinance. *Friends of Georges*, 2023 U.S. Dist. LEXIS 96766, at *22 (naming Attorney General in official capacity as proper defendant); *S. Utah Drag Stars v. City of St. George*, No. 4:23-cv-00044-DN-PK, 2023 U.S. Dist. LEXIS 105876, at *76 (D. Utah June 16, 2023) (ordering injunctive relief against council members, mayor, and city manager in official capacity); *Woodlands Pride*, 2023 U.S. Dist. LEXIS 171268, at *23 (naming defendants responsible for enforcing state law). As such, they are appropriate defendants in their official capacities in Counts I through XI, and those claims are not duplicative of the claims against the City. The Court should deny the Individual Defendants' motion to dismiss them in their official capacities in these counts.

With respect to Counts XII through XIV, which name Mayor McFarland and City Manager Tindall in their official capacities (as well as their individual capacities, as discussed above), those official capacity claims are not duplicative of the claims against the City, because McFarland and Tindall also relied upon state law in formulating their unconstitutional policy. For example, in Tindall's October 17, 2022 letter formalizing the City's unconstitutional policy, he makes the unfounded allegation that TEP violated "Tennessee Statutes, Title 39, Chapter 17" (Offenses

17

Against Public Health, Safety and Welfare), as a rationale for imposing the policy denying TEP's future permit applications. Compl., Ex. F. Furthermore, Tindall's email to City Officials, including McFarland, the next day claimed that the 2022 BoroPride Festival was "a violation of state law," which was a rationale for imposing the policy. *Id.*, Ex. H. These documents show that McFarland and Tindall were both state and city actors when making these decisions. Because they unconstitutionally enforced state law, they are appropriate defendants in their official capacities for the injunctive relief sought in Counts XII through XIV. *See Cady*, 574 F.3d at 344 (recognizing that injunctive relief is available against state actors); *Pusey*, 11 F.3d at 658, n.4 (same).

TEP, however, concedes that its claims for money damages against McFarland and Tindall in their official capacities in Counts XII through XIV are duplicative of those counts against the City. The Eleventh Amendment bars claims for money damages against state actors in their official capacities under section 1983. *See Cady*, 574 F.3d at 344. Thus, the claims against McFarland and Tindall for money damages in their official capacities can only be brought against them as city actors, not state actors, and those claims therefore are duplicative of the claims against the City. Nevertheless, the Court should deny McFarland's and Tindall's motion to dismiss them in their official capacities, because they are appropriately named in their official capacities in Counts XII through XIV with respect to the injunctive relief TEP seeks.

## CONCLUSION

For the foregoing reasons, TEP respectfully requests that the Court deny the Individual Defendants' motion to dismiss in its entirety.


Respectfully submitted,

*/s/ Michael P. Robotti*
Alex Little, # 029858
**Burr Forman LLP**

222 Second Avenue South, Suite 2000
Nashville, TN 37201
(615) 724-3200
alex.little@burr.com

Stella Yarbrough, # 033637
Lucas Cameron-Vaughn, # 038451
Jeff Preptit, # 038451
**ACLU Foundation of Tennessee**
P.O. Box 120160
Nashville, TN 37212
(615) 320-7142
syarbrough@aclu-tn.org
lucas@aclu-tn.org
jpreptit@aclu-tn.org

Li Nowlin-Sohl (admitted *pro hac vice*)
(admitted only in Washington)
**American Civil Liberties Union Foundation**
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
lnowlin-sohl@aclu.org

Michael P. Robotti (admitted *pro hac vice*)
Jacquelyn N. Schell (admitted *pro hac vice*)
Andrew M. Hensley (admitted *pro hac vice*)
D. Alan White (admitted *pro hac vice*)
Catherine I. Seibel (admitted *pro hac vice*)
**Ballard Spahr LLP**
1675 Broadway, 19th Floor
New York , NY 10019-5820
(212) 223-0200
robottim@ballardspahr.com
schellj@ballardspahr.com
hensleyd@ballardspahr.com
whiteda@ballardspahr.com
seibelc@ballardspahr.com

## [CORRECTED] CERTIFICATE OF SERVICE

I certify that, on November 29, 2023, the undersigned counsel for Plaintiff Tennessee Equality Project Foundation, Inc. ("TEP") electronically filed the foregoing Memorandum of Law in Opposition to Joint Motion to Dismiss Filed on Behalf of Individual Defendants ("Opposition"), using the Court's cm/ecf system, which automatically provides notice via email to the following counsel of record:

Robert M. Burns
Samantha Burnett
HOWELL & FISHER, PLLC
3310 West End Avenue, Ste. 550
Nashville, TN 37203
rburns@howell-fisher.com
SBurnett@howell-fisher.com
*Attorneys for City of Murfreesboro,*
*Tennessee*

Kristin E. Berexa
Cassandra M. Crane
FARRAR & BATES, LLP
12 Cadillac Drive, Suite 480
Brentwood, TN 37027
kberexa@fbb.law
ccrane@fbb.law
*Attorneys for Defendants*
*McFarland & Tindall,*
*in their individual capacities*

Pursuant to L.R. 5.01 and the Court's November 30, 2023 Notice to Filer, I am on November 30, 2023, refiling the Opposition with a Corrected Certificate of Service, which includes the name of the persons served, document served, method of service, and date of service. This revised version will also be served automatically by email on the foregoing counsel through the Court's cm/ecf system.

Respectfully submitted,

/s/ *Michael P. Robotti*
Michael P. Robotti

20